Wright, J.,
delivered the opinion of the court:
By its contract with the defendant the plaintiff had obligated itself to construct a new bridge over the Mississippi River between Rock Island, Ill., and Davenport, Iowa, with one drawspan for the use of navigation upon the river, this latter to have been completed March 3, 189(5, in order that river navigation might not be interrupted by the work of constructing the bridge, it being then understood by the parties that river navigation would open between that date and the 1st of April following, and the intention of the parties was to provide for and accommodate that event. During the winter the river was frozen, and February 26, 1896, as the result of a thaw, the movement of ice in the river at this point caused 'the destruction of the incompleted draw span; and to prevent interference with navigation, with the advice of defendant’s officers, plaintiff erected a temporary lift span, to be operated upon the bridge, for the accommodation of railroad traffic and river navigation until the permanent draw span could be reconstructed. This suit is to recover for the cost of the construction of the lift span.
There is dispute in the several contentions of the parties relative to their respective liabilities for the cost of the temporary span made necessary by the action of the ice in the river upon the incompleted bridge. It is not denied that it was beyond the power of petitioner to reconstruct a permanent draw span in time to accommodate the opening of river navigation, nor that the erection of the lift span was the most feasible and inexpensive way to meet the necessities of the public in that regard. After the destruction of the incom-pleted draw span the militar}7 officer in charge, upon consultation with his subordinates, determined that the lift span should be constructed, and so advised the representatives of the petitioner, which the latter now construes as an order of that officer, but whether advice merely or an order, we deem unimportant, for if the latter, petitioner was under no obligation, except to fulfill the terms of its contract, and the officer possessed no power over the claimant, or authority to represent the defend *509 ant, except also as provided in the terms of the contract itself, and there can be no just claim that it gives sanction to such order of that officer, or power to vary the terms stipulated therein for his principal, except such as relate to change of plans merely. Hence the case clears itself, and is to be settled exclusively by the contract as made by the parties. Tt is not disputed that by the stipulation ^f the contract the draw span was to be completed March 1, or if the contention of plaintiff is to be admitted, the time was extended to March 15, and for this purpose it would be immaterial which date should be adopted, for the 'fact remains that the draw span was not completed before March 15, and in order not to obstruct river navigation, and at the same time accommodate railroad traffic, as contemplated byr the contract, it was necessary to construct the temporary lift span. Without the fault of the defendant, plaintiff was, b}r an unforeseen event, rendered powerless to perform its contract rvithin the time stipulated and it was met by the contingency of subjecting itself to the consequences of interrupting river navigation incident to its inability to perform, and the incurrence of such damages to the defendant and the public as might result from such interruption, or assume the burden of providing a temporary means of avoiding the obstruction of the river, and it chose the latter alternative. In any aspect of the case in rvhich it may be presented, we are of the opinion that by the contract of the plaintiff it assumed the burden of this accident, if it ma}' be thus characterized. It has been argued, to unburden itself of this liability, that the ice flow was the act of God, and thereby the contract was rendered impossible of performance. It can not be denied that the ice flow was the act of God, and by reason thereof the contract could not be performed, but counsel for plaintiff are mistaken in their application of the law in such cases, when it is claimed the bridge company was excused from performance because of the act of God, where the event which caused the impossibility of performance might have been anticipated and guarded against in the contract. The event of a frozen river and its incident of ice gorges is of common observation in the locality of this contract, and might well have been anticipated by the *510 parties. It is, we think, in such cases, elementary law, needing no authority in support of it, that if a party contract to perform anything which is possible at the time when the contract is made, but afterwards becomes an impossibility, he is liable in damages resulting from nonperformance thereof. The distinction is that if an obligation be imposed by law, and does not arise from his contract, if it be rendered impossible afterwards by the act of God, or bj^ the act of the Government, he will be excused for nonperformance. In the case presented the obligation does arise from the contract of the party, and does not therefore fall within the exception of things rendered impossible by the act of God. The rule is that if a person desires exemption from such acts it must be so provided in the contract (Story on Contracts, sec, 975; Chitty id., 1071), and there is no pretense that such was done in the present case.
After the bridge was completed, the voucher for the final payment was sent by the Department to the military officer in charge at Rock Island, who was required by his superiors to insist upon a stipulation in the receipt to be executed by the plaintiff to the effect that the payment therein designated should be in. full for all charges, claims, adjustments, differences, or other alleged indebtedness incident to the work or related to it in any manner whatsoever, thereby clearly evincing an intention to include the claim in question. Previous to this timé the representatives of the plaintiff had been, insisting upon a claim for compensation from the Government for the construction of the lift span, which had been denied and resisted by the officers of the defendant and a counterclaim against claimant insisted upon for dela3r in the work. There was at least honest dispute and differences between the parties in this regard. Plaintiff’s representative', objected to the • execution of the document in the form insisted upon, but was informed by the officer unless he did so the instructions from Washington were that all matters in dispute should be referred to the Department for adjustment. The person in charge of the business for the plaintiff advised directly with his principal relative to the matter, after which, to enable the plaintiff to gain immediate use of the final payment of twelve thousand nine *511 hundred and thirty-five dollars' and forty cents (112,935.10), he executed the voucher as required, and in the form and substance we have recited, and payment was made accordingly. No protest could be continued as effective under the circumstances, for by signing the release and accepting payment without first returning the money so obtained, such protest, was abandoned, and hence petitioner’s reliance upon a protest, if one existed, is futile. It has been often held by courts of highest resort, and is familiar law, that the compromise of honest disputes or differences of the parties, forms a good consideration for the discharge of all supposed liabilities growing out of them, and that a release or discharge so obtained and given is valid and binding upon the party who executes it. No undue advantage was taken of the plaintiff; it was free to accept or reject the payment upon the terms proposed, and it saw fit to choose the former, and it must be held to abide by the effect of its own voluntary act.
It results from our expressed views that plaintiff can not recover, and its petition will therefore be dismissed.